Filed 7/26/21  P. v. Quiming CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE DEVLIN QUIMING,<br><br>    Defendant and Appellant. | H047387<br>(Monterey County<br> Super. Ct. No. SS151045A) |

## I.    INTRODUCTION

Convicted of first degree murder (Pen. Code, § 187, subd. (a))[1] and attempted voluntary manslaughter (§§ 664/192, subd. (a)), defendant Jesse Devlin Quiming appeals after the trial court declined to strike a prior serious felony conviction (§ 667, subd. (a)) when resentencing him on remand by this court.  Defendant contends that he received ineffective assistance of counsel at the resentencing hearing because counsel had a conflict of interest that prevented him from presenting evidence of defendant's mental illness.  The Attorney General contends that the claim has been forfeited and that defendant has failed to establish counsel's ineffectiveness at the resentencing hearing because defendant has not demonstrated that there was an actual conflict of interest or that he was prejudiced.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

For reasons that we will explain, we determine that defendant has not demonstrated that he was prejudiced by the asserted conflict of interest. We therefore affirm the judgment.

## II. PROCEDURAL BACKGROUND[2]

### A. *Verdicts, Sentencing, and Initial Appeal*

A jury convicted defendant of first degree murder (§ 187, subd. (a)) and attempted voluntary manslaughter (§§ 664/192, subd. (a)) and found true the allegations that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) in the commission of both crimes and personally inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of attempted voluntary manslaughter. The trial court found true the allegations that defendant had a prior strike conviction (§ 1170.12, subd. (c)(1)) and a prior serious felony conviction (§ 667, subd. (a)(1)). After denying defendant's *Romero*[3] motion to strike his prior strike conviction, the court sentenced defendant to 56 years to life.

In an opinion filed September 12, 2018, we affirmed the judgment. Defendant petitioned the California Supreme Court for review. On December 19, 2018, the California Supreme Court granted review, S252103, and transferred the matter to this court with directions to vacate our decision and to reconsider the case in light of Senate Bill No. 1393, which became effective on January 1, 2019. Senate Bill No. 1393 gave trial courts the discretion to strike prior serious felony convictions for purposes of the five-year sentence enhancement under section 667, subdivision (a)(1). (Sen. Bill No. 1393 (2017-2018 Reg. Sess.), Stats. 2018, ch. 1013, § 1 [amending § 667, subd. (a)(1)], § 2 [amending § 1385, subd. (b)].)

---

[2] Because the facts underlying defendant's convictions are not relevant to the issue on appeal, we do not summarize them here.

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

In an opinion filed January 31, 2019,[4] we vacated our prior decision, reversed the judgment, and remanded the matter for resentencing to allow the trial court to exercise its discretion to strike defendant's prior serious felony conviction. We also ordered the trial court to consider whether either former or current section 1001.36 applied retroactively to defendant and, if so, whether defendant was eligible for mental health diversion under the terms of the statute.

## B.    *Proceedings on Remand*

On remand, the parties filed sentencing memoranda in the trial court and provided briefing on section 1001.36. In defendant's sentencing memorandum, trial counsel requested that the court strike defendant's prior serious felony conviction. Counsel stated that defendant had "for much of his adult life . . . battled mental illness" and had been diagnosed with bipolar disorder. Counsel asserted that defendant had been "unable to meet some of his basic needs" and "unable to secure the medication he needed to deal with his bipolar disorder." Counsel also raised the circumstances of defendant's prior serious felony conviction, including that he did not actively participate in the offense, which was planned and carried out by his codefendants. Counsel argued that if the court struck the prior serious felony conviction, general sentencing objectives would be satisfied by a 51 year to life sentence. Counsel concluded, "Throughout [defendant's] adult life, he has had mental health concerns for which he was not able to get proper treatment. As a result, [defendant] has found himself in the non-envious position of being without proper medication. Based on the facts presented, the court should use . . . section 1385 to strike his prior conviction."

In defendant's section 1001.36 briefing, as relevant here, trial counsel stated that defendant suffered from at least one qualifying mental disorder, namely, paranoid

---

[4] This court's opinion in *People v. Quiming* (Jan. 31, 2019, H043494) [nonpub. opn.] is part of the record on appeal. On our own motion, we take judicial notice of the record in case No. H043494. (See Evid. Code, §§ 452, subd. (b), 459.)

3

schizophrenia, and referred to a letter from defendant's former psychiatrist that had previously been submitted to the court. Counsel argued that defendant was "entitled to a pretrial diversion hearing, wherein the court may consider the effect of his mental illness on the charged offenses and his suitability for mental-illness treatment in lieu of prosecution."

In its sentencing memorandum, the prosecution asked the trial court not to exercise its discretion to strike defendant's prior serious felony conviction based on the facts of the current offenses, the court's earlier decision to deny defendant's *Romero* motion, and defendant's criminal history. As relevant here, the prosecution observed that "[d]efendant claims mental illness as the main reason for his crimes," but argued that "[i]f that were true, or at least somewhat supported by convincing evidence, then defendant would be in a better position to ask this court to use its discretion" to strike the prior. The prosecution asserted that "drugs and alcohol were the predominate causes of [defendant's] criminal behavior" and that "[b]eing refused alcohol caused [defendant] to go into a murderous rage." The prosecution also contended that because defendant had not filed a section 1001.36 petition, there were "no facts . . . upon which to argue or discuss [defendant's] eligibility" for mental health diversion.

On June 5, 2019, the trial court ruled that neither former nor current section 1001.36 applied retroactively to defendant. The court also determined that even if there were retroactive application, under the factors listed in section 1001.36, it would not "find that there would be an appropriate way to handle [defendant] pursuant to the . . . statute." The court stated that it was "fully aware of the facts surrounding the case" as it had presided over the jury trial and that it had "an understanding of [defendant's] mental health issues." The court stated that it could not "imagine a circumstance where this Court would have found it appropriate to divert these charges."

The trial court resentenced defendant on August 21, 2019. In declining to strike defendant's prior serious felony conviction, the court stated: "The Court does understand

4

that it does have discretion under 1385, Subdivision 'B', now whether or not to impose the five years on the 667(a) prior. [¶] And in reviewing the sentencing -- the probation report, the sentencing in this matter, as well as the documents filed by the parties, the Court declines to exercise its discretion to strike the 667(a) prior. [¶] The prior was a serious prior. . . . [A]nd the . . . current case, the murder case that the Court did try a couple years ago, was serious as well. It involved not only the murder of the one individual, but serious attacks on others. [¶] The Court does not find any reason at this point to strike the 667(a)."

On December 5, 2019, defendant's appellate counsel filed a letter in the trial court asking the court to recall defendant's sentence because trial counsel had "at least the appearance of a conflict of interest [during resentencing] based upon the ineffective assistance of counsel claims pending . . . in the habeas proceeding." The court declined to recall defendant's sentence.

## III. DISCUSSION

Defendant contends that he received ineffective assistance of counsel at resentencing because trial counsel had an actual conflict of interest that prejudiced defendant. Defendant observes that before resentencing, he filed a habeas petition claiming that counsel had been ineffective before and during trial because "he failed to investigate [defendant's] mental competence, failed to request a competency hearing, and failed to investigate and raise a mental health defense." Defendant asserts that because of the pending habeas allegations, trial counsel failed at resentencing to "present *any* of the mental health evidence that had been submitted in the habeas proceeding" as "the evidence would have shown that he had been ineffective in his representation of [defendant] during trial proceedings years before."

### A. *Defendant's Habeas Petition*

On June 28, 2019, after the trial court had determined section 1001.36 did not apply retroactively to defendant but before resentencing, defendant filed a petition for

5

writ of habeas corpus in the superior court asserting that his trial counsel was ineffective before and during trial because he failed to investigate defendant's competence to stand trial and failed to investigate or raise a mental health defense.[5]  Defendant is represented in the habeas matter by the same counsel who represents defendant on appeal; defendant is not represented by his trial counsel in the habeas matter.[6]

Defendant submitted 13 exhibits with the habeas petition, one of which was a June 10, 2019 declaration by defendant's trial counsel.[7]  Other exhibits to the habeas petition included a 14-page, June 4, 2019 declaration by Dr. John M. Greene detailing defendant's background, evaluating defendant's mental health, and opining that defendant was in "[a] delusional and paranoid mental state" on the date of the offenses; declarations by several of defendant's family members regarding defendant's background, the change in defendant's behavior and mood after he suffered two head injuries, and defendant's subsequent mental illness and treatment; and 2011, 2015, 2016, and 2018 medical records pertaining to defendant's mental illness, treatment, and prescribed medication.  Among other items included as exhibits to the declaration by defendant's mother was a letter from a Florida psychiatrist who treated defendant in 2004 and 2005 for paranoid schizophrenia.  The psychiatrist opined that "it is likely that [defendant] was extremely mentally ill at the time of his crime" and that defendant's "appeal should be on the basis of insanity."  (Capitalization omitted.)

---

[5] Defendant has requested that we take judicial notice of his habeas petition and the return to the order to show cause.  The Attorney General does not oppose defendant's request for judicial notice of the habeas petition "to the extent it informs this Court's assessment of the asserted conflict of interest," but states that "the allegations in the habeas petition are disputed and may not be taken as true."  The Attorney General has not responded to defendant's request for judicial notice of the return.  We hereby grant defendant's requests for judicial notice.

[6] Defendant states in his opening brief that the habeas petition is before a different judge than the trial judge.

[7] The prosecution submitted a second declaration by defendant's trial counsel dated June 3, 2020, as an exhibit to the return to the order to show cause.

6

**B.** *Forfeiture*

While acknowledging that ineffective assistance of counsel claims can generally be raised for the first time on appeal, the Attorney General contends that defendant's ineffective assistance claim has been forfeited because it could have been raised below. The Attorney General argues that because trial counsel's alleged conflict of interest arose from defendant's habeas petition, which was filed more than a month before resentencing, defendant was obligated to alert the trial court that he was dissatisfied with counsel's representation. The Attorney General urges us to find defendant's ineffective assistance of counsel claim forfeited because " '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (Quoting *People v. Vera* (1997) 15 Cal.4th 269, 275.)

However, defendant's appellate counsel did bring trial counsel's alleged conflict of interest to the trial court's attention when he filed a letter asking the court to recall the sentence pursuant to section 1170, subdivision (d) based on the conflict. Thus, because a defendant is generally not required to make an ineffective assistance of counsel claim in the trial court before raising it on appeal (*People v. Carrasco* (2014) 59 Cal.4th 924, 982) *and* because appellate counsel requested the trial court to recall the sentence based on trial counsel's conflict of interest at resentencing, we decline to find forfeiture here.

**C.** *Ineffective Assistance of Counsel Based on a Conflict of Interest*

**1. Legal Standards**

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client." (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).) " 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or

efforts on behalf of, a client are threatened by his [or her] responsibilities to another client or a third person or his [or her] own interests. [Citation.]" ' " (*Ibid.*)

To establish ineffective assistance of counsel based on a conflict of interest, a defendant must show (1) "counsel labored under an actual conflict of interest 'that affected counsel's performance—as opposed to a mere theoretical division of loyalties,' " and (2) "a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different."[8] (*Doolin*, *supra*, 45 Cal.4th at p. 417, italics omitted; see *id.* at p. 419 [adopting federal standard for evaluating an ineffective assistance of counsel claim based on an asserted conflict of interest].) "A reasonable probability" is "a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Id.* at p. 697.)

### 2. Analysis

We conclude that defendant's ineffective assistance of counsel claim based on the asserted conflict of interest at resentencing fails because defendant has not demonstrated "a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different." (*Doolin*, *supra*, 45 Cal.4th at p. 417.)

As stated above, before the resentencing hearing, trial counsel raised defendant's mental illness in a sentencing memorandum, observing that defendant had "battled mental illness" "for much of his adult life" and had been without proper treatment and medication. In briefing on section 1001.36, which was also filed before resentencing, trial counsel stated that defendant suffered from paranoid schizophrenia and referenced a letter from defendant's former psychiatrist previously submitted to the court.

---

[8] When an alleged conflict of interest arises from multiple concurrent representation, a situation not present here, prejudice is presumed. (*Doolin*, *supra*, 45 Cal.4th at p. 429.)

Before resentencing, the trial court reviewed "the probation report, the [prior] sentencing in this matter, as well as the documents filed by the parties." The probation report included statements defendant made to the probation officer in December 2015, following his convictions. Defendant referred to "his mental health problems" and said that he had not been taking his medications at the time of the offenses. Defendant specified that he had been previously diagnosed with depression and bipolar disorder. He told the probation officer he planned "to change his plea in the case to one of insanity."

In addition, a number of letters were submitted on defendant's behalf before the 2016 sentencing hearing that raised defendant's mental health issues. Defendant's aunt, a licensed psychiatric social worker, described how defendant claimed that voices in his head had caused him to commit the offenses and stated that defendant's mental health had "severely deteriorated during the last few years" and that defendant had expressed delusional thoughts to her when she visited him in jail. Defendant's sister indicated that she had witnessed defendant's mental illness and specified that defendant was schizophrenic and suffered from delusions, hallucinations, and paranoia. She noted that defendant had suffered "serious head trauma" and had begun to change about 10 years earlier. Defendant's mother wrote that defendant's personality changed after he suffered "two serious head injuries from falls" when he was a teenager. In 2014, she discovered that defendant was hearing voices. She believed that in the weeks leading up to the offenses, defendant had been "hearing auditory command hallucinations" and had a "psychotic episode." A letter from a Florida psychiatrist who treated defendant in 2004 and 2005 when defendant was "suffering from paranoia and psychotic features" was also provided. The psychiatrist indicated that the letter was submitted to support an appeal for defendant on the basis of insanity. The psychiatrist felt it was likely that defendant was "extremely mentally ill at the time of his crime."

Although the exhibits filed with defendant's habeas petition present more detailed information regarding defendant's background, mental illness, and treatment than the

9

information submitted to the trial court in conjunction with the initial sentencing or the resentencing, and include a 2019 declaration by a psychiatrist who opined on defendant's mental health at the time of the offenses, based on its review of the parties' filings on remand, the probation report, and the initial sentencing, the trial court was certainly well aware of defendant's background and mental health issues when it resentenced him and declined to strike his prior serious felony conviction. Moreover, approximately two and a half months before resentencing, the trial court stated at the section 1001.36 hearing that it was "fully aware of the facts surrounding the case" and that it had "an understanding of [defendant's] mental health issues," when it concluded that it was not "appropriate to divert these charges."

Thus, given the information provided to the trial court through the probation report, the initial sentencing, and the parties' filings on remand, we conclude that defendant has not shown "a ' "demonstrable reality" ' " that he was prejudiced by trial counsel's failure to present additional evidence of his mental illness. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.) In other words, there is not "a reasonable probability that, absent counsel's deficiencies, the result of the [resentencing] would have been different" had counsel submitted to the trial court at resentencing the mental health evidence filed in support of the habeas petition. (*Doolin*, *supra*, 45 Cal.4th at p. 417.)

## IV.    DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. Quiming*
**H047387**